MICHAEL WALLIN, Cal. Bar No. 240344
WALLIN & RUSSELL LLP
26000 Towne Centre Drive, Suite 130
Foothill Ranch, California 92610
Telephone:  949-652-2200
Facsimile:   949-652-2210
mwallin@wallinrussell.com

Attorneys for Plaintiffs
THOMAS I. MCKNEW and LISA A. MCKNEW

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>DAVID ALLEN WILSON,<br><br>          Debtor.<br>————————————————<br><br>THOMAS I. MCKNEW, IV and LISA A. MCKNEW, individually and as Trustees of the MCKNEW FAMILY TRUST DATED MAY 21, 2004,<br><br>          Plaintiffs,<br><br>    v.<br><br>DAVID ALLEN WILSON,<br><br>          Defendant. | Case No. 8:23-bk-10094-SC<br>Chapter 7<br><br>Adv. Case No. 8:23-ap-01034-SC<br><br>Assigned for all purposes to:<br>Honorable Scott Clarkson<br><br>**PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT; DECLARATION OF MICHAEL WALLIN**<br><br><u>Hearing</u><br>Date:   October 17, 2023<br>Time:  1:30 p.m.<br>Place:  Courtroom 5C<br>       411 W. Fourth Street<br>       Santa Ana, CA 92701 |

-1-

Plaintiffs Thomas I. McKnew, IV and Lisa A. McKnew, individually and as Trustees of the McKnew Family Trust Dated May 21, 2004 (collectively, "Plaintiffs") hereby move this Court for entry of a default judgment against defendant David Allen Wilson.  In support of the Motion, Plaintiffs state as follows:

## I.    Local Rule 7055-1(b)

In compliance with Local Rule 7055-1(b), Plaintiffs state:

1.    Plaintiffs seek entry of a default judgment against David Allen Wilson ("Defendant").  Defendant's default was entered on July 14, 2023.  *See* Docket No. 9.

2.    Defendant is neither an infant nor an incompetent person.

3.    Defendant is not currently on active duty in the armed forces of the United States.

4.    Out of an abundance of caution, this Motion has been served on Defendant and Defendant's counsel in the main bankruptcy case.

## II.    Procedural History

In 2008, Defendant filed Chapter 7 bankruptcy in the Central District of California, Case No. 2:12-bk-16195-RK (the "Prior Bankruptcy Case").

In 2009, Plaintiffs initiated an adversary proceeding against Defendant, Case No. 2:12-ap-01317-RK (the "Prior Adversary Proceeding").  In the Prior Adversary Proceeding, Plaintiffs sought a determination that Defendant's liability to Plaintiffs was non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).  The Prior Bankruptcy Case and Prior Adversary Proceeding were assigned to Judge Robert Kwan.

The Prior Adversary Proceeding came on for trial before Judge Kwan on February 2, 2012, February 3, 2012, February 6, 2012, August 30, 2012, August 31, 2012, and September 6, 2012. At the conclusion of trial and post-trial briefing, the Court issued its *Memorandum Decision on Adversary Complaint for Nondischargeability of Debts* (the "Memorandum Decision") and found that Defendant's liability to Plaintiffs was non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).  In addition, the Court found that Defendant's misrepresentations actually and proximately damaged Plaintiffs in the amount of $2,500,000.00, plus attorneys' fees, prejudgment interest, and costs of suit.

In April 2014, the Court entered its *Amended Judgment in Favor of Plaintiffs and Against Defendant Based on Memorandum Decision on Adversary Complaint for Nondischargeability of Debts* (the "Judgment").  The Judgment states, in pertinent part, that Defendant's liability to Plaintiffs is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and further states:

> IT IS ORDERED AND ADJUDGED that on their claim for relief under § 523(a)(2)(A) the court finds by a preponderance of the evidence that Wilson represented he would perform his contractual obligations under the Cash Infusion Agreement, including selling or refinancing his Residence or the his Office property and thus, the court finds by a preponderance of the evidence that Wilson's misrepresentation actually and proximately damaged Plaintiffs in the amount of $2,500,000.00 plus: (1) $0.00 in attorneys' fees; (2) $845,270.35 in pre-judgment interest through February 26, 2014, accruing at $475.45 per day, and $14,587.70 in costs of suit.  *See* **Exhibit A**.

Defendant filed the present bankruptcy case on January 18, 2023 (the "Current Bankruptcy Case").  On April 27, 2023, out of an abundance of caution, Plaintiffs initiated this adversary proceeding seeking a determination that the Judgment is non-dischargeable.  *See* Docket No. 1.  In the Current Adversary Proceeding, Defendant was served with the Summons, Complaint, and related documents on May 1, 2023.  *See* Docket No. 4.

Defendant failed to file a response to the complaint filed in this action.  As a result, the Court entered Defendant's default on July 14, 2023.  *See* Docket No. 9.

## III.    Background Facts

By way of further background, the following paragraphs summarize Defendant's conduct underlying the Prior Adversary Proceeding and the Court's entry of the Judgment:

1.      Defendant is and was a developer of real property throughout the United States who regularly conducted business in the County of Orange, State of California through a variety of limited liability companies and corporations under the names of, among others, A&W Builders, Inc., A&W Builders of California, Inc., American Builders Corporation, and Parkside Ventures, LLC (hereinafter referred to as "Parkside").

2.      Plaintiffs are informed and believe, and upon information and belief allege that Parkside is and was a limited liability company formed under the laws of the State of California. Parkside was principally engaged in the design, development, and planning for the conversion of a

1  another 2nd mortgage lender or come up with the additional collateral to pay off Bridge Capital in

2  the amount of $8,662,225.00.

3        7.      Defendant offered UCB as additional collateral for the deal a lien interest in his

4  house, his office building, and the net proceeds from the settlement of certain claims related to

5  property located in Hawaii, which he told UCB he would obtain within 60 days.

6        8.      UCB was dissatisfied with the collateral offered by Defendant.

7        9.      Defendant and the Parkside Partners approached Mr. McKnew and requested that

8  Mr. McKnew (i) continue his efforts to locate a new mezzanine lender for the project, (ii) forego

9  his normal and customary commission on the UCB 1st mortgage and any possible 2nd mortgage

10  loan, and (iii) join the Parkside Partners by taking an interest in the Parkside Project.

11        10.     As an inducement to Mr. McKnew to (i) continue his efforts to locate a new

12  mezzanine lender for the project, (ii) forego his normal and customary commission on any a new

13  mezzanine lender found for the Parkside Project, and (iii) join the Parkside Partners by taking an

14  interest in the Parkside Project, Defendant and the Parkside Partners represented to Mr. McKnew

15  that Defendant would (x) provide all of the net proceedings from the Hawaii litigation to fund the

16  Parkside Project, (y) if required, Defendant would sell his house and his office building to fund the

17  Parkside Project, and (z) UCB would look to Defendant's substantial equity in Defendant's house,

18  office building, and the Hawaii litigation proceeds before looking to Mr. McKnew's collateral.

19        11.     As a further inducement to Mr. McKnew to become involved in the Parkside

20  Project, Defendant and the Parkside Partners provided Mr. McKnew with a written appraisal of

21  Defendant's house located at 24352 Santa Clara, Santa Point, CA 92629 (hereinafter referred to as

22  the "residence") showing a current fair market value of $12.5 million.  Defendant and his Parkside

23  Partners further represented to Mr. McKnew that Defendant had $9.5 million in equity in his

24  house.  But for the presentation of the $12.5 million appraisal on Defendant's house, Mr. McKnew

25  would not have become involved in the Parkside Project or assumed any liability to UCB in

26  conjunction with the deal.

27        12.     As a further inducement to Mr. McKnew to become involved in the Parkside

28  Project, Defendant and the Parkside Partners provided Mr. McKnew with various personal

1    financial statements each of which made reference to certain real and personal property assets,

2    including without limitation, the real property located at 27926 Finisterra, Mission Viejo,

3    California and the 232 Morningstar, Breckenridge, Colorado (hereinafter collectively referred to

4    as the "Subject Properties").  These written financial statements showed that the Subject Properties

5    had "equity" of at least $700,000.00.

6         13.    As a further inducement to Mr. McKnew to become involved in the Parkside

7    Project, Defendant and the Parkside Partners represented to Mr. McKnew that (i) between the

8    equity in Defendant's house and office building and the cash that would be generated from the

9    Hawaii litigation, Defendant had in excess of $9.5 million in equity or cash to apply to the

10   Parkside deal ahead of any potential exposure to Mr. McKnew, (ii) that Defendant would sell his

11   house and office building to maintain the loan with UCB and to fund the continued development

12   of the Parkside Project thus avoiding potential risk and exposure to Plaintiffs in the deal, and (iii)

13   Plaintiffs and the lenders could also look to Defendant's other real and personal property to

14   maintain the Parkside Project.

15        14.    Defendant's representations regarding the value of his house, the equity in

16   Defendant's assets, and his willingness to sell his personal assets to further the Parkside Project

17   were known to Defendant to be false when made to Plaintiffs and the lenders.

18        15.    Mr. McKnew agreed to help Defendant by giving UCB a 1st deed of trust on his

19   condominiums in San Francisco and Hawaii and a guarantee to keep $1 million in his stock

20   account for the benefit of UCB for a total commitment by Mr. McKnew of $2.5 million.  This was

21   envisioned as a short-term solution until either Mr. McKnew could find a replacement 2nd

22   mortgage lender or Defendant would pay off the 2nd mortgage from the proceeds from the Hawaii

23   settlement and/or a refinance or sale of his other assets.

24        16.    In reliance upon the oral and written representations made by Defendant and the

25   Parkside Partners on or about December 10, 2006, Mr. McKnew executed the Agreement re

26   Brokerage Account and Additional Collateral with UCB.  In further reliance upon the oral and

27   written representations made by Defendant and the Parkside Partners, Mr. McKnew continued his

28   efforts to locate a new mezzanine lender for the Parkside Project.

17.     Per the December 19, 2006 closing statement, UCB paid off Bridge Capital in the amount of $8,662,225.00 and China Trust in the amount of $8,697,217.00 for a combined total of $17,359,442.00.  The remaining funds of $3,315,558 were used for interest reserves, mechanics lien releases, real estate taxes, etc., which totaled the committed loan amount of $20,675,000.

18.     Time was of the essence since the original reserve of the UCB loan had been meant to fund the construction and completion of the Parkside Project but was now being used to pay off Bridge Capital.  The Parkside Project required an additional $8.5 million to finish construction.

19.     It was envisioned that over the next 120-days, Defendant would receive funds from another project in Hawaii that he had pledged to UCB.  The funds from the Hawaii settlement were received in the amount of $3,594,178 and Defendant refinanced his office building and used $263,272 in additional proceeds to pay down the 2nd mortgage held by UCB to $4,804,775.

20.     Over the same time period, it was also envisioned that Mr. McKnew would attempt to find another 2nd mortgage lender to pay off UCB in the amount of $4,804,775.  It was envisioned that, if this were not possible, Defendant would liquidate his other collateral and if there was any shortfall to UCB, Plaintiffs' collateral would be used to pay down the remaining amount of the 2nd mortgage.

21.     At the request of Defendant and the Parkside Partners, in March 2007, UCB released $1.97 million to private notes and credit card bills which were never contemplated to be part of the funding for the Parkside Project.  The release of said funds benefitted Defendant and the Parkside Partners to the detriment of Plaintiffs and the lenders and the ability of Parkside to continue construction to completion.

22.     In March 2007, Mr. McKnew presented the partnership a proposal from Western Peaks Financial for a new 2nd mortgage in the amount of $5,500,000 which would have paid off the remaining balance of the UCB 2nd mortgage and extinguished both Defendant's and Plaintiffs' collateral agreement and the funds would have been enough to finish the Parkside Project.  However, Mr. McKnew was told by Defendant that the proposal was too pricey and to continue to look for a better priced loan.

23. In approximately July 2007, Defendant, the Parkside Partners, and Mr. McKnew hammered out a new exit strategy with UCB so that UCB would start releasing funds for construction to complete the Parkside Project. In order to obtain the cooperation of UCB, Mr. McKnew agreed to put up $2.5 million in cash and Defendant agreed to put up another $2,750,000 by December 2007 or UCB would force the sale of Defendant's house and then use these funds to complete the Parkside Project. In order to document this understanding, the parties executed the Agreement for Cash Infusion and Release of Collateral dated August 10, 2007.

24. As an inducement to Mr. McKnew to reaching an agreement with UCB on the Parkside Project loan, Defendant and the Parkside Partners expressly represented to Mr. McKnew that the equity in Defendant's house and his other real property assets would be used to maintain the Parkside Project and protect the investors' interests, if needed.

25. Throughout the negotiations with UCB and Mr. McKnew, Defendant and the Parkside Partners falsely and fraudulently represented to Mr. McKnew that Defendant would sell his house, his office building, and his other real property in order to raise cash to complete construction of the Parkside Project. Some of these representations were made in meetings with Mr. McKnew and UCB and outlined in the Agreement for Cash Infusion and Release of Collateral signed by both Defendant and Plaintiffs in August 2007.

26. Defendant identified real and personal property in his personal financial statements shown to Plaintiffs and the lenders, which written financial statements Defendant represented could be used by Mr. McKnew in his efforts to locate and secure new mezzanine financing for the Parkside Project. Part of the asset based identified by Defendant contained real and personal property which in fact Defendant now contends belongs to his wife as her sole and separate property.

27. Mr. McKnew's infusion of capital was intended for a specific purpose, specifically for UCB to continue funding the Parkside Project while giving Defendant an additional six (6) months to sell his assets so as to pay off the remaining mezzanine loan amount of $2,750,000.00. In a meeting with UCB in San Francisco on July 30, 2007, Defendant, the other Parkside Partners, and Mr. McKnew met at the bank to discuss the future of the Parkside Project. The bank verbally

agreed at the meeting, and it was later put into formal agreement entitled "Agreement For Cash Infusion and Release of Collateral" and signed by the bank, Plaintiffs, and Defendant's and Defendant's spouse, that if Plaintiffs would put up in cash, by September 15, 2007, in the amount of $2.5 million then the bank would continue funding the Parkside Project and Defendant would have until December 31, 2007, to raise the additional funds.

28.     Per the "Agreement Regarding Brokerage Account and Additional Collateral", signed in December 2006 between UCB and Mr. McKnew, the bank would first foreclose on Defendant's assets before looking to Mr. McKnew's collateral (not to exceed $2.5 million) if there was a shortfall on the mezzanine loan made by UCB.  Defendant then asked Mr. McKnew if he would instead put up Plaintiffs' collateral first, instead of Defendant's collateral because Defendant needed time to sell his assets.  Defendant specifically said he did not need such a large house anymore because his kids had moved out and it was just himself and his wife living in their home.  Mr. McKnew agreed to this because Defendant said he would sell his assets immediately and Mr. McKnew was led to believe by both Defendant and the other Parkside Partners that Defendant's assets were sufficient to cover the mezzanine loan amount made by UCB.

29.     By Mr. McKnew putting up his cash instead of collateral, UCB agreed to continue funding the Parkside Project until December 31, 2007. as long as Defendant would sell his assets immediately.  Mr. McKnew put up his collateral by September 15, 2007, as agreed upon.

30.     Defendant listed his home with a Realtor chosen by him alone on December 20, 2007, at First Team Real Estate, just 11 days before his $2,750,000.00 commitment to the bank was due.  This was done over the holidays, which are typically the slowest time of year to try and sell a home.

31.     On November 7, 2007, without informing Mr. McKnew or the bank, Defendant sold a home in Colorado for $670,000, none of which was put into the Parkside Project.  Plaintiffs are lastly informed and believe, and upon information and belief allege that faced with such blatant disregard for the agreement Defendant had signed with both UCB and Mr. McKnew, the bank stopped funding the Parkside Project and it went into foreclosure.

32.     Plaintiffs did not know of the true facts and circumstances prior to the pledge of their personal property to the lender on the Parkside Project and only learned of such facts and circumstances after they had pledged his collateral to UCB.

33.     In connection with Mr. McKnew's discussions with Defendant and the Parkside Partners in early 2008, Defendant for himself and his partners in the Parkside Project provided Mr. McKnew with: (a) personal financial statements for Defendant showing a net worth of $22.0 million; (b) the Second Amended and Restated Operating Agreement of Parkside Ventures, LLC showing Defendant as having $888,000 in capital invested in the project; and (c) the appraisal of Defendant's house.

34.     Defendant and the Parkside Partners knew, or should have known, as Mr. McKnew shopped the potential new mezzanine financing for the Parkside Project, that (i) the Parkside Project was at risk, (ii) Defendant had no intention of selling his house, (iii) Defendant's house did not have $9.5 million equity, (iv) Defendant did not have $22.5 million in net worth, and (v) Defendant and the Parkside Partners had misled UCB and Mr. McKnew regarding the development of the Parkside Project.  Neither Defendant nor any of his partners informed Mr. McKnew of such facts.

35.     The financial information supplied by Defendant and the Parkside Partners to Plaintiffs and the lenders was false and unreliable and known to Defendant and his partners to be false.  Mr. McKnew could not have discovered the falsity of Defendant's misstatements and fraud until after Mr. McKnew posted his collateral with UCB.

## IV.    Legal Argument

As stated in the Court's tentative ruling dated July 18, 2023,

> Pursuant to 11 U.S.C. § 523(b), debts excepted from discharge under § 523(a) are not dischargeable.  Moreover, "a determination of nondischargeability in one bankruptcy case bars redetermination of that issue in a subsequent bankruptcy case.  In other words, once nondischargeable, always nondischargeable." *Bankruptcy Recovery Network v. Garcia* (In re Garcia), 313 B.R. 307, 310 (9th Cir. B.A.P. 2004) (internal quotations and citations omitted).  *See* **Exhibit B**.

1   In the Prior Adversary Case, the Court determined that Defendant's liability to Plaintiffs is

2   non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).  As a result, the Judgment was entered in

3   the Prior Bankruptcy Case.

4   In this proceeding, Plaintiffs merely seek a determination, out of an abundance of caution,

5   that the Judgment remains non-dischargeable.  Plaintiffs are entitled to such a determination as a

6   matter of law.

7   **V.    Conclusion**

8   Based on the foregoing, Plaintiffs respectfully request that the Court enter a judgment

9   providing that the Judgment entered in the Prior Adversary Case (Case No. 2:12-ap-01317-RK)

10  remains non-dischargeable and that such judgment is not impacted by any discharge obtained by

11  Defendant in the Current Bankruptcy Case.

12

13  Dated:  September 12, 2023

14  WALLIN & RUSSELL LLP

15

16  By        */s/ Michael Wallin*

17  MICHAEL WALLIN
    Attorneys for Plaintiffs
    THOMAS I. MCKNEW, IV and LISA A. MCKNEW

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF MICHAEL WALLIN

I, Michael Wallin, declare:

1.     I am an attorney, licensed to practice in this Court, and am a partner in the law firm of Wallin & Russell LLP, counsel of record for plaintiffs Thomas I. McKnew, IV and Lisa A. McKnew (collectively, "Plaintiffs").  I have personal knowledge of the facts set forth below, and if called to testify regarding them, I could and would do so competently.

2.     By this Motion, Plaintiffs seek entry of a default judgment against David Allen Wilson ("Defendant").  Defendant's default was entered on July 14, 2023.

3.     Defendant is neither an infant nor an incompetent person.

4.     Defendant is not currently on active duty in the armed forces of the United States.  I know this because I have examined Defendant and communicated with him numerous times. During such communications, at no point has Defendant indicated that he is a military service member.

5.     In April 2014, the Court in the Prior Adversary Case (as defined above) entered its *Amended Judgment in Favor of Plaintiffs and Against Defendant Based on Memorandum Decision on Adversary Complaint for Nondischargeability of Debts* (the "Judgment").  The Judgment states, in pertinent part, that Defendant's liability to Plaintiffs is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and further states:

> IT IS ORDERED AND ADJUDGED that on their claim for relief under § 523(a)(2)(A) the court finds by a preponderance of the evidence that Wilson represented he would perform his contractual obligations under the Cash Infusion Agreement, including selling or refinancing his Residence or the his Office property and thus, the court finds by a preponderance of the evidence that Wilson's misrepresentation actually and proximately damaged Plaintiffs in the amount of $2,500,000.00 plus: (1) $0.00 in attorneys' fees; (2) $845,270.35 in pre-judgment interest through February 26, 2014, accruing at $475.45 per day, and $14,587.70 in costs of suit.

6.     A true and correct copy of the Judgment is attached hereto as **Exhibit A**.

7.     Attached hereto as **Exhibit B** is a true and correct copy of the tentative ruling posted by the Court on July 18, 2023.

-12-

1       I declare under penalty of perjury under the laws of the United States of America that the

2  foregoing is true and correct.  Executed on September 12, 2023 at Foothill Ranch, California.

                                       _____

                                          Michael Wallin

# EXHIBIT A

JAMES ANDREW HINDS, JR. (SBN 71222)
jhinds@jhindslaw.com
PAUL R. SHANKMAN (SBN 113608)
pshankman@jhindslaw.com
HINDS & SHANKMAN, LLP
Attorneys and Counselors
21515 Hawthorne Blvd., Suite 1150
Torrance, California 90503
Telephone: (310) 316-0500
Facsimile: (310) 792-5977

**FILED & ENTERED**

**APR 03 2014**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gae          DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:12-bk-16195-RK |
| DAVID A. WILSON, | (Chapter 7) |
| Debtor. | Adv. No. 2:12-ap-01317-RK |
| THOMAS I. MCKNEW, IV and LISA A. MCKNEW, individually and as Trustees of the MCKNEW FAMILY TRUST DATED MAY 21, 2004, | **AMENDED JUDGMENT IN FAVOR OF PLAINTIFFS AND AGAINST DEFENDANT BASED ON MEMORANDUM DECISION ON ADVERSARY COMPLAINT FOR NONDISCHARGEABILITY OF DEBTS** |
| Plaintiffs, | |
| vs. | DATE:        October 29, 2013 |
| | TIME:        3:00 p.m. |
| DAVID A. WILSON, | PLACE:      CRTM # 1675 |
| Defendant. | |

This adversary proceeding came on for trial before the undersigned United States

Bankruptcy Judge on February 2, 2012, February 3, 2012, February 6, 2012, August 30,

2012, August 31, 2012, and September 6, 2012, on the complaint of plaintiffs Thomas I.

McKnew IV and Lisa A. McKnew, individually and as Trustees of the McKnew Family

HINDS & SHANKMAN, LLP
21515 Hawthorne Blvd. Ste. 1150
Torrance, CA 90503

Trust dated May 21, 2004 (hereinafter referred to as the "Plaintiffs"), to determine

dischargeability of the debts of debtor David A. Wilson (hereinafter referred to as either

"Wilson" or the "Defendant") pursuant to 11 U.S.C. §§ 523(a)(2), (4), and (6).  Appearances

were as noted on the record.  After the close of evidence, the parties submitted post-trial

briefs and proposed findings of fact and conclusions of law.  The court took the matter under

submission on March 7, 2013 after the last post-trial brief was filed.

On September 27, 2013, the Court issued its Memorandum Decision on Adversary

Complaint for Nondischargeability of Debts (hereinafter referred to as the "Memorandum

Decision") and found that Wilson's debt owed to Plaintiffs was nondischargeable under 11

U.S.C. § 523(a)(2)(A), thereby finding that Wilson's misrepresentation actually and

proximately damaged Plaintiffs in the amount of $2,500,000.00 plus attorneys' fees, pre-

judgment interest, and costs of suit to be determined by further Order of this Court.  See

Court Docket Item No. 221.  The Court entered a Judgment based on the Memorandum

Decision (hereinafter referred to as the "Judgment") on October 10, 2013.  See Court

Docket Item No. 237.

On December 2, 2013, Plaintiffs filed a Bill of Costs requesting costs in the amount of

$14,587.70.  See Court Docket Item No. 252.  On December 17, 2013, the Court allowed

the Bill of Costs in the amount of $14,587.70.  See Court Docket Item No. 262.

On October 7, 2013, Plaintiffs filed a Motion for Order Awarding Attorneys' Fees

and/or to Fix Amount of Attorneys' Fees (hereinafter referred to as the "Motion for Attorneys'

Fees") and a Motion for Order Awarding Pre-Judgment Interest (hereinafter referred to as

the "Motion for Pre-Judgment Interest" and collectively, with the Motion for Attorneys' Fees

as the "Motions").  See Court Docket Item Nos. 228 and 229, respectively.  The Court

2

1    entered an Order Denying the Motion for Attorneys' Fees on December 12, 2013.  See

2    Court Docket Item No. 256.

3        On February 3, 2014, the Court issued its Statement of Decision on the Motion for

4    Pre-Judgment Interest (hereinafter referred to as the "Pre-Judgment Interest Decision")

5    finding that the Plaintiffs are entitled to pre-judgment interest at a rate of 7% simple interest

6    per annum on the $2,500,000.00 of damages from their loss commencing April 30, 2009.

7    See Court Docket Item No. 278 at pg. 3.  The Court also determined that the interest on the

8    debt did not cease as of the filing of the Debtor's bankruptcy petition.  See id.

9        On February 26, 2014, the Court entered an Order on the Pre-Judgment Interest

10   Decision, Ordering that: **(1)** Plaintiffs are entitled to pre-judgment simple interest on the non-

11   dischargeable debt of $2,500,000.00 owed to them at a rate of 7% per annum, commencing

12   April 30, 2009; **(2)** the pre-judgment interest on the debt does not cease as of the filing of

13   the bankruptcy petition; and **(3)** an Amended Judgment in favor of the Plaintiffs shall issue

14   consistent with this Order.  See Court Docket Item No. 284.

15       The Court having fully considered all of the oral and documentary evidence

16   presented by the parties, the legal points and authorities submitted by counsel, the

17   argument of counsel, and being fully advised, the Court having issued its Memorandum

18   Decision, its Judgment, its Order Denying Attorneys' Fees, its Pre-Judgment Interest

19   Decision, its Order Granting Pre-Judgment Interest, the Court having reviewed the

20   Declaration of Brian Yeretzian in Support of Amended Judgment, and good cause appear

21   therefor,

22       **IT IS ORDERED AND ADJUDGED** that on their claim for relief under § 523(a)(6)

23   Plaintiffs abandoned this claim and shall take nothing against the Defendant.

IT IS ORDERED AND ADJUDGED that on their claim for relief under § 523(a)(2)(B) Plaintiffs take nothing against the Defendant.

IT IS ORDERED AND ADJUDGED that on their claim for relief under § 523(a)(2)(A) the court finds by a preponderance of the evidence that Wilson represented he would perform his contractual obligations under the Cash Infusion Agreement, including selling or refinancing his Residence or the his Office property and thus, the court finds by a preponderance of the evidence that Wilson's misrepresentation actually and proximately damaged Plaintiffs in the amount of $2,500,000.00 plus: (1) $0.00 in attorneys' fees; (2) $845,270.35 in pre-judgment interest through February 26, 2014, accruing at $475.45 per day, and $14,587.70 in costs of suit.

IT IS ORDERED AND ADJUDGED that on their claim for relief under § 523(a)(4) Plaintiffs take nothing against the Defendant.

IT IS SO ORDERED.

# # #

Date: April 3, 2014

_____

Robert Kwan
United States Bankruptcy Judge

# EXHIBIT B

# United States Bankruptcy Court
## Central District of California
### Santa Ana
### Scott Clarkson, Presiding
### Courtroom 5C Calendar

---

**Tuesday, July 18, 2023**                                      **Hearing Room**        **5C**

---

<u>1:30 PM</u>
**8:23-10094    David Allen Wilson**                                                          **Chapter 7**
Adv#: 8:23-01034        McKnew et al v. Wilson

    **#22.00**

            STATUS CONFERENCE Hearing RE:   Complaint To Determine
            Nondischargeability Of Debt Pursuant To 11 U.S.C. Section 523
            (Complaint filed 4/27/2023)

                      Docket        1

**Tentative Ruling:**

    Tentative for 7/18/23:

    As a preliminary matter, the Court notes that no status report has been filed,
in contravention with applicable LBR 7026-1 and the Early Meeting of
Counsel and Status Conference Instructions attached to the summons issued
on 4/27/23 [Dk. 3]. As noted therein, failure to comply may be grounds for the
imposition of monetary or nonmonetary sanctions, including the dismissal of
the complaint. The Court will excuse the non-compliance in this instance, but
cautions that future non-compliance may not be permitted.

    Notwithstanding the forgoing, the Court is inclined to CONTINUE this status
conference and issue an order to show cause (OSC) why this complaint
should not be dismissed as a matter of law. Pursuant to 11 U.S.C. § 523(b),
debts excepted from discharge under § 523(a) are not dischargeable.
Moreover, "a determination of nondischargeability in one bankruptcy case
bars redetermination of that issue in a subsequent bankruptcy case. In other
words, once nondischargeable, always nondischargeable." *Bankruptcy
Recovery Network v. Garcia (In re Garcia)*, 313 B.R. 307, 310 (9th Cir. B.A.P.
2004) (internal quotations and citations omitted).

    The continued status conference and OSC shall be heard on September 12,
2023, at 1:30 p.m. with responses due 14 days in advance of the hearing.
Replies may be filed 7 days before the hearing. Failure to file a response may
result in the dismissal of the complaint and/or other monetary or non-
monetary sanctions.

---

**United States Bankruptcy Court**
**Central District of California**
**Santa Ana**
**Scott Clarkson, Presiding**
**Courtroom 5C Calendar**

**Tuesday, July 18, 2023**                                                **Hearing Room        5C**

1:30 PM
**CONT...      David Allen Wilson**                                                            **Chapter 7**

Virtual appearances are required. The hearing will take place using Zoom for
Government, a free service that provides audioconference and
videoconference capabilities. The parties, including counsels, their clients,
and pro se individuals, may virtually join the hearing. No testimony, however,
will be permitted unless specifically authorized by the Court either prior to, or
during, the hearing. Parties virtually appearing should consult the NOTICE OF
VIDEO AND TELEPHONIC APPEARANCE PROCEDURES FOR JUDGE
SCOTT CLARKSON'S CASES for specific procedures and further
information.

The audio portion of each hearing will be recorded electronically by the Court
and constitute its official record. By Order of the Judicial Conference of the
United States, members of the general public may only view the hearings
from the Courtroom, which will remain open. This is a nation-wide mandate
and is not subject to this Court's discretion. The Court will have monitors on
and viewable within the Courtroom for viewing.

Hearing participants may connect to the videoconference through an Internet
browser by entering the Videoconference URL shown below, as well as the
meeting ID and password, when prompted.

Videoconference URL:        https://cacb.zoomgov.com/j/1613929469

Meeting ID:                161 392 9469

Password:                  202782

If a participant is unable to send and receive audio through his/her computer,
or join the videoconference through an Internet browser for any reason, the
audio of the hearing may be accessed by telephone using the following audio
conference information:

Audioconference Tel. No.: +1 (669) 254 5252 or +1 (646) 828 7666

Meeting ID:                161 392 9469

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

 26000 TOWNE CENTRE DRIVE, SUITE 130, FOOTHILL RANCH, CA 92610

A true and correct copy of the foregoing document entitled (*specify*): MOTION FOR ENTRY OF DEFAULT
JUDGMENT; DECLARATION OF MICHAEL WALLIN
_____
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
09/12/2023_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☑ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) __09/12/2023_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

David Allen Wilson
24352 Santa Clara Avenue
Dana Point, CA 92629

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) __09/12/2023_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

 Bert Briones, Esq.:  bb@redhilllawgroup.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 09/12/2023 | Michael Wallin | /s/ Michael Wallin |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**SERVED VIA NOTICE OF ELECTRONIC FILING:**

- **Richard A Marshack (TR)**    pkraus@marshackhays.com,
  rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov